IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBIN HICKMAN,  )
    Petitioner,  )
  )
    v.  )    2:18-cv-1144
  )
MICHAEL OVERMYER, et al.,  )
    Respondents.  )

MEMORANDUM OPINION and ORDER

Robin Hickman by his counsel has submitted a petition and amended petition for a writ of habeas corpus (ECF Nos. 1 and 5). For the reasons set forth below, the petitions will be dismissed and because reasonable jurists could not conclude that a basis for relief exists, a certificate of appealability will be denied.

Hickman is presently serving a twenty-two to forty-four year sentence of imprisonment imposed on February 11, 2013 following his conviction by a jury of third degree murder, conspiracy and carrying a firearm without a license at No. CP-02-CR-10825-2011 in the Court of Common Pleas of Allegheny County, Pennsylvania.[1] A timely appeal was filed in the Superior Court in which the issues presented were:

> I. Did the trial court abuse its discretion in denying the motion to suppress Robin Hickman's statement to the police insofar as he did not knowingly and voluntarily waive his Miranda rights?
>
> II. Did the trial court err in allowing the taped statement of Mr. Hickman to be re-played to the jury at the jury's request after it had begun to deliberate resulting in undue emphasis being placed on this evidence, which prejudiced Mr. Hickman?
>
> III. Did the trial court err in ruling that the fact that alleged co-conspirator, Hashim Rashad confessed to the crime, was inadmissible evidence?[2]

---

[1] A twenty to forty year sentence was imposed on the third degree murder conviction and a consecutive two to four year sentence was imposed on the firearms violation (Exhibit 1 to the Answer at p.3).
[2] See: Respondents' Answer at p. 114.

On October 29, 2014 the judgment of sentence was affirmed.[3] Allowance of appeal was denied by the Pennsylvania Supreme Court on March 3, 2015.[4]

On February 29, 2016. Hickman filed a post-conviction petition which was amended and dismissed on June 28, 2016.[5] An appeal to the Superior Court was filed in which the questions presented were:

> I. Whether the Appellant was denied effective assistance of counsel at sentencing?
>
> II. Whether the Appellant was denied effective assistance of counsel during the post-sentence stage of this case?[6]

On December 27, 2017, the denial of post-conviction relief was affirmed[7] and leave to appeal was denied by the Pennsylvania Supreme Court on May 24, 2018.[8]

The instant counseled petition was originally filed on August 23, 2018 (ECF No. 1) and amended on October 3, 2018 (ECF No. 5). In the amended petition, Hickman raises the following issues:

> I. Petitioner was denied his Fifth Amendment right against self-incrimination when the trial court erred in denying the motion to suppress Robin Hickman's statement to the police insofar as he did not knowingly and voluntarily waive his *Miranda* rights where he was 17 years old, he relied on his parents to assist him in his previous interactions with law enforcement, he was not given an opportunity to speak to his parents, and he was interrogated for hours while he was shackled to the floor.
>
> II. Petitioner claims the trial court erred in ruling that the fact that alleged co-conspirator, Hashim Rashad, confessed to the crime, was inadmissible evidence in violation of petitioner's right to due process under the 14th Amendment to the U.S. Constitution.
>
> III. Petitioner was denied effective assistance of counsel at sentencing.

---

[3] Id. at pp. 203-216.
[4] Id. at p.300.
[5] Id. at p. 402.
[6] Id. at p. 514 (an earlier brief was submitted by defense counsel who ultimately withdrew and the above referenced brief was submitted by final appellate counsel).
[7] Id. at pp. 630-644.
[8] Id. at p. 684.

IV. Petitioner was denied effective assistance of counsel during the post-sentencing stage of his case.[9]

Relying on the trial court's opinion, the Superior Court summarized petitioner's conviction as follows:

> This matter arises out of the shooting death of Davis Spahr on November 15, 2010. The Commonwealth established that the victim was found shot to death while seated in the driver's seat of his vehicle on Bortz [W]ay in Swissvale, Pennsylvania… Ballistic analysis later established that the bullet taken out of Spahr's right mandible at autopsy had been fired by a .357 Taurus revolver. The Taurus revolver had been recovered by police during an investigation into a subsequent unrelated homicide of Charles Wooding… During that investigation, Defendant was questioned by police and he ultimately led police to the Taurus revolver which was found where it had been thrown… Allegheny County ballistic experts matched the bullet taken from Spahr's body with the gun that had been used in the Wooding shooting. In addition, the Commonwealth established that a fingerprint found on the exterior passenger's side door of Spahr's vehicle matched the right little finger print of Defendant.
>
> The Commonwealth also offered at trial Defendant's confession which he made at the time of his arrest on July 28, 2011. Defendant was given his **Miranda** rights at police headquarters. In his confession, Defendant stated that on the day of the shooting he returned from work to his apartment and met with another individual Hashim Rashad. Rashad told Defendant that he was having problems with Spahr over money. Rashad then asked Defendant to go with him to a meeting with Spahr at which time Rashad wanted Defendant to shoot Spahr… Rashad then told Defendant to bring his gun, which Defendant then got from his apartment. Rashad and Defendant then proceeded to meet Spahr. Rashad told Defendant that they were going to get into the [sic] Spahr's vehicle truck [sic] and then Defendant was to shoot him… Defendant and Rashad exited the vehicle. At that time Rashad yelled at Defendant for not shooting the victim when they first got in the truck. Defendant and Rashad then returned[ed] to the vehicle at which point Defendant walked up to the vehicle and fired one shot and then turned and ran. Defendant testified as he was running he heard additional shots being fired and he continued running to his apartment where he hid the gun.
>
> At trial, Defendant testified in his defense and recanted the confession, alleging that he was coerced into making it…

---

[9] ECF No.5 at p.7. In its answer the respondents concede that the instant petition is timely (Answer at p.17).

3

> While Defendant denied shoot Spahr, Defendant admitted that he later
> came into possession of the Taurus revolver used in the Spahr killing,
> but not until four months after Spahr was killed…
>
> Defendant testified that on March 15, 2011, he met Charles Wooding
> who told Defendant that he had a gun for sale at a low price…
> Wooding and Defendant met later in the day… Defendant testified
> "… once we go inside … I give him the money for the gun… When
> [Wooding] turns around, pulls out a handgun… I stepped back and he
> cocks the gun back… I panic, I believe if I didn't pull the trigger to
> the revolver, I would have died that day."
>
> Defendant testified that after he shot Wooding he ran out of the
> building, through an alleyway and left by a set of steps where he
> threw the gun… Defendant testified that he told the detectives that he
> had shot Wooding in self-defense and later took detectives to find the
> Taurus revolver. Defendant denied any involvement in the killing of
> David Spahr… Defendant testified that he signed [the waiver of rights
> form] because… he was scared and "I would've said anything…"
> (transcript references and footnotes omitted). [10]

Petitioner's first allegation his that the trial court erred in denying his motion to suppress his statement in that it was not knowingly and voluntarily made at a time he was 17 years old and at which time he was not permitted to speak to his parents.

While any custodial interrogation entails "inherently compelling pressures", such circumstances become "more acute - when the subject of custodial interrogation is a juvenile." J.D.V. v. North Carolina, 564 U.S. 261, 269 (2011). In summary, the Court concluded that "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test." Id. at 277.

At the suppression hearing held on June 20, 2012, the petitioner's father testified that Hickman's date of birth was July 31, 1993 (TT.6/20/12 at p.86). Petitioner testified that he was arrested on July 28, 2011 at a juvenile facility (Id. p.44) at which time his counselors were present (Id. at p. 63). We note that at the time of his arrest, petitioner was three days shy of his eighteenth birthday. He also testified that he had previous experience with the police; that during that arrest he was advised of his Miranda rights, and that he was aware that he did not have to speak to the police (Id. at pp.66-68).

---

[10] See: Respondents' Answer at pp. 200 -207.

Nevertheless, as the suppression hearing petitioner testified that he was directed to sign some papers authorizing his transfer from Westmoreland County where the juvenile facility was located to Allegheny County (Id. at pp.48-50); that he did not request an attorney but on four occasions asked to call his mother to request her to secure counsel (Id. at pp.53, 58, 76); that the detectives said they did not have to call his mother (Id. at p.54); that he was forced to sign papers and make a taped statement and he did so because he was nervous and felt threatened (Id. at pp.55-56, 60, 69, 71, 75).

Following the suppression hearing, the trial court wrote:

a. The Defendant was only three days shy of his eighteenth birthday when he gave the statement. In addition, he had been involved with several police departments, including the Allegheny County Police, on at least three occasions prior to this incident.

b. Exhibits 1 and 2 [waivers] were clearly executed by the Defendant knowingly, intelligently and voluntarily.

c. The statement given by the Defendant was made after he was properly Mirandized by the Allegheny County Homicide Detectives. The statement made by the Defendant was made knowingly and voluntarily.[11]

In reviewing a challenge to a confession, courts look to the voluntary nature of the statement as well as the defendant's personal situation including his age, education, intelligence, mental condition and prior experiences with the criminal justice system. United States v. Jacques, 744, F.3d 804, 809 (1st Cir.) cert. denied 135 S.Ct. 131 (2014).

The factual findings of state courts are entitled to deference. 28 U.S.C. § 2254 (e)(i). As the state courts held, the record in this prosecution demonstrates that the petitioner was three days shy of adulthood; had had frequent previous encounters with the law; was aware of his Miranda rights and did knowingly, intelligently and voluntarily confess to the police. Thus, this claim does not provide a basis for relief.

Hickman's second claim is that the trial court erred in excluding the confession of Hashim Rashad, his alleged co-conspirator. Petitioner contends that the co-conspirator's confession was admissible under Pa. R.E. 804(b)(3) as a hearsay statement against interest.[12] As

---
[11] Id. at p.56.
[12] The statement was excluded based on the fact that although Pa.R.Evid. 804(b)(3)(B) provides for the admissibility of hearsay statements against ones penal interest, such statement must be " supported by corroborating

5

a matter of Pennsylvania law, this claim is not subject to review here. Swarthout v. Cooke, 131 S.Ct. 859 (2011). In order to provide a basis for federal relief, the claim must demonstrate a violation of clearly established federal law. Mitchell v. Supt., 902 F.3d 156 (3d Cir. 2018), (petition for certiorari filed Nov. 21, 2018). No such showing is made here, and for this reason, the claim does not provide a basis for relief.

Petitioner's third and fourth claims allege ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The first claim is that counsel was ineffective at sentencing. Specifically, it is alleged that "defense counsel presented no mitigation expert, nor presented evidence and/or argument on many relevant sentencing factors. Indeed, Appellant was a juvenile when this offense occurred."[13]

While the petitioner recognizes the holding in Miller v. Alabama, 543 U.S. 551 (2012) barring the imposition of mandatory life sentences without parole on juveniles is

---

circumstances that clearly indicate its trustworthiness ." The trial court concluded that no such demonstration was made. (Answer at p.166).
[13] See: Amended petition at p.23.

not applicable here, he argues that the factors that the Court considered in its review of juvenile sentences should be applied to him and that his counsel failed to present the type of evidence which the Supreme Court indicated to be relevant in juvenile sentencing.[14]

In the instant case, Hickman was convicted of third degree murder which is deemed a felony of the first degree. 18 Pa.C.S.A. § 2502 (c). The penalty upon conviction is a sentence of not more than forty years. 18 Pa.C.S.A. §1102(d). As noted, petitioner received a twenty to forty year sentence, which is a statutory legal sentence. As a general proposition, a state sentence is not subject to review in a federal proceeding unless it exceeds the statutory maximum. LaBoy v. Carroll, 437 F.Supp. 2d 260 (D.Del. 2006). Such is not the case here.

Petitioner next argue that counsel was ineffective in not introducing exculpatory evidence that co-defendant Rashad killed Spahr during a struggle over a gun. Specifically, at the post-conviction hearing defense counsel testified:

> During the interview of Hashim Rashad by detectives, Mr. Rashad told his version of the events regarding the victim in the case, Mr. Spahr that essentially Mr. Rashad and Mr. Spahr were in a vehicle, there was some sort of argument over a drug debt, money, that Mr. Spahr pulled a gun, there was a struggle over the gun, and ultimately Mr. Rashad was able to get control of that gun and fired a couple shots which killed Mr. Spahr.
>
> Q. Did you consider Rashad's statement to the police exculpatory vis-à-vis Mr. Hickman?
>
> A. I did.
>
> Q. Did you attempt to introduce Mr. Rashad's statement at the trial of Mr. Hickman?
>
> A. I did. And the Commonwealth objected and that objection was sustained…
>
> Q. Did you attempt to introduce Mr. Rashad's statement at sentencing relative to Mr. Hickman?
>
> A. I don't believe I did… Once that statement was ruled inadmissible at my trial, I kind of forgot about it…

---

[14] It bears repeating that at the time the crime was committed the petitioner was only three days short of achieving adulthood.

7

> Q. Do you believe that had you introduced that statement at sentencing … that there would be a reasonable possibility that the sentence could have been less than what it was?
>
> A. Certainly possible. (TT.6/27/16 pp. 4-5).

Under Pennsylvania law, evidence deemed inadmissible at trial cannot be introduced at the time of sentencing. Commonwealth v. Rhodes, 990 A.2d 732, 745 (Pa.Super. 2009), allowance of appeal denied 609 Pa. 688 (2010) ("reliance on matters outside the record …" improper). Commonwealth v. Nieves, 2018 WL 71723*4 (Pa. Super. 2018) ("This Court has found that grounds for vacating a sentence exist where the sentencing court relied on information that was not part of the record…"). As a matter of Pennsylvania evidence, this issue is not subject to review here. Swarthout supra. and counsel cannot be deemed ineffective for failing to introduce this statement.

Finally, Hickman contends that he was denied the effective assistance of counsel during the post-sentencing stage of his prosecution. Specifically, in this regard petitioner argues:

> Shortly after sentencing, Petitioner asked his attorney, Mr. Abramovitz to file post-sentence motions, including a motion for reconsideration of sentence. Mr. Abramovitz withdrew from the case the day after sentencing and new counsel, William Brennan, Esquire, was appointed 2 or 3 days after sentencing. Mr. Brennan did not visit nor consult with Petitioner during the 10-day period in which Petitioner had to file his post-sentencing motions. Hence, counsel filed no post-sentence motions and Petitioner was deprived of effective assistance of counsel during this critical stage of the process. (ECF No.5 at p. 29).

In addressing the issue of the imposed sentence, the trial court wrote:

> At the sentencing on February 11, 2013, the Court considered the testimony of Defendant's father, uncle and mother concerning Defendant's social and educational background and personal characteristics. The Court also considered the testimony of the victim's family…
>
> The Commonwealth noted that Defendant showed no remorse with regard to the death of the victim and that evidence established that the victim was killed over a few dollars. Defendant offered no statement. (transcript references omitted).[15]

---

[15] See: Respondents Answer at pp. 104-105.

At the post-conviction hearing, petitioner's second counsel testified that while he raised the sentencing issue in his statement of matters complained of on appeal, he did not address the issue in his argument in view of the fact that "I have never, and don't know of anyone who has, who has in essence prevailed when you have a standard range sentence." And, while he acknowledged that the sentencing issue was waived by not being timely raised in the trial court, he believed that it was a losing argument and instead his strategy was to focus on the three issues he believed had arguable merit. (TT. 6/27/16 p.16).

In addressing this allegation in the context of an ineffective assistance of counsel claim, the Superior Court adopted the reasoning of the post-conviction court writing:

> [I]t is clear that [Hickman] has failed to establish that a motion for reconsideration of sentence would have resulted in a different and more favorable sentence. … [T]he sentence was within the standard range, was based on full consideration of the presentence report, the facts of the time and the evidence presented at the sentencing hearing. The various evidence proffered by [Hickman] … would not have resulted in an order modifying the sentence to a different or more favorable sentence. Therefore, [Hickman] has failed to demonstrate actual prejudice as a result of ineffective assistance of counsel.[16]

Thus, there is no support for the claim that post-trial counsel was ineffective as the petitioner has failed to demonstrate any actual prejudice as a result of counsel's inaction. Strickland at 694.

The petitioner has failed to demonstrate that his conviction was secured in any manner contrary to federal law as determined by the Supreme Court nor involved an unreasonable application of those decisions. For this reason, he is not entitled to relief here and his petition and amended petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

---

[16] See: Id. at pp.643-644.

ORDER

AND NOW, this 23rd day of January, 2019 for the reasons set forth in the foregoing Memorandum Opinion, the petition and amended petition for a writ of habeas corpus (ECF Nos. 1 and 5) are DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/ Robert C. Mitchell  
United States Magistrate Judge